IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JARED CHARPENTIER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MEARS GROUP, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:20-cv-2004<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Jared Charpentier ("Plaintiff"), on behalf of himself and all others similarly situated, files this Complaint against Mears Group, Inc. ("Defendant"), showing in support as follows:

### I.   NATURE OF THE CASE

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA/PPPA") for Defendant's failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven day workweek as an employee of Defendant.

2. Plaintiff and the putative collective action members work/worked for Defendant as hourly paid laborers in connection with Defendant's utility construction related business operations.

3. Plaintiff files this lawsuit on behalf of himself and as a FLSA/PPPA collective action on behalf of all other similarly situated current and/or former employees of Defendant who work(ed) as hourly paid laborer and/or foremen employees, and like Plaintiff, are not/were not

*Plaintiff's Original Complaint – Page* 1

paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period of three years preceding the date this lawsuit was filed and forward.

4. Plaintiff and the collective action members seek all damages available under the FLSA/PPPA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.     THE PARTIES, JURISDICTION, AND VENUE

### A.     Plaintiff Jared Charpentier

5. Plaintiff is a natural person and resident of Dallas County, Texas. He has standing to file this lawsuit.

6. Plaintiff is employed by Defendant in Dallas County, Texas.

7. By filing this lawsuit and complaint, Plaintiff consents to be a party plaintiff to this FLSA/PPPA action pursuant to 29 U.S.C. § 216(b). Plaintiff's consent to join is attached to this Complaint as Exhibit A.

### B.     Collective Action Members

8. The putative collective action members are all current and/or former laborer and/or foremen employees of Defendant who are/were paid on an hourly basis who are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek. All remuneration paid to the putative collective action members, is and/or should have been included in calculating their respective regular rates of pay. Because Defendant did not and does not pay all overtime premium compensation to its hourly paid laborer and/or foremen employees who routinely work(ed) in excess of 40 hours per workweek, Plaintiff and the

putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA/PPPA.

9. The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward, or such other time period as deemed appropriate by the Court.

10. Plaintiff reserves the right to redefine the class, request more than one class, and/or request sub-classes relative to any motion for conditional certification filed in this lawsuit.

C. **Defendant Mears Group, Inc.**

11. Defendant is a foreign for-profit corporation.

12. During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

13. At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

14. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

15. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

16. For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, pipes, pipeline parts, pipeline accessories, phones, computers, computer-related accessories, and office supplies.

17. On information and belief, Defendant has had annual gross sales or business volume in excess of $500,000 at all times relevant to this lawsuit.

18. Defendant may be served with summons through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

**D. Jurisdiction and Venue**

19. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

20. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

21. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

22. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA/PPPA.

23. Venue is proper in this Court because Plaintiff worked for Defendant in Dallas County, Texas, and events relevant to Plaintiff's claims in this lawsuit occurred in Dallas County, Texas.

### III. FACTUAL BACKGROUND

24. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

25. Defendant is engaged in the utility construction and repair business in many locations in the United States.

26. Defendant represents to the public that it is a leader in underground infrastructure and provides comprehensive turnkey services to the oil and natural gas, electric, telecom, and waste/water industries.

27. Plaintiff is employed by Defendant in Dallas County, Texas.

28. Plaintiff began his employment with Defendant in approximately June 2019 as a laborer paid on an hourly basis. As a laborer, Plaintiff's hourly rate of pay was approximately $18.00.

29. In approximately July 2020, Defendant promoted Plaintiff to foreman. As a foreman, Plaintiff is and was paid on an hourly basis. As a foreman, Plaintiff's hourly rate of pay is and was approximately $21.00.

30. Defendant employs numerous other hourly paid laborers and foremen in its business operations nationally.

31. Plaintiff works from the yard owned, controlled, and/or operated by Defendant in Grand Prairie, Texas (the "Yard").

32. The physical address for the Yard is believed to be 3326 Hardrock Road, Grand Prairie, Texas.

33. Defendant uses the Yard as a base of operations for employees like Plaintiff. Vehicles, tools, supplies, equipment, and other goods and/or materials relative to the work performed by Plaintiff and the putative collective action members are stored and/or maintained at that Yard. Planning for the workday is performed at the Yard. Plaintiff and the putative collective action members report to the Yard for the start of their scheduled shift and leave that Yard at the end of their scheduled shift.

34. As a laborer, Plaintiff was required to report to the Yard at the scheduled start of his shift in a given day. At the Yard, Plaintiff planned for the workday and gathered tools, supplies, and other goods and materials needed for the work projects in a given day.

35. From the Yard, Plaintiff and other members of his crew, which included a foreman and one or more laborers (the "Crew"), drove to and/or rode in a company vehicle to the first work location of a customer for Defendant. Defendant had a practice and/or policy to not pay Crew member employees other than the driver for the time they arrived at the Yard in the morning, performed work, and spent driving from the Yard to the first work location of the day. All such time was during the FLSA's continuous workday rule. Furthermore, preparing for the daily jobs at the Yard by arriving at the start time of their scheduled shift and performing the aforementioned work is and was integral and indispensable to the job duties performed by Plaintiff and the putative collective action members.

36. Some workdays had more than one work location. Many workdays included an employee meeting before the various crews left for their different work assignments. Some drive times between job locations were not paid. Specifically, Ty Eglin, an employee of Defendant's who is and was a manager over the Crews, stated that Crew members (which could be a foreman or a laborer) driving from one job location to another job location during a workday needed to clock out for pay purposes due to potential "insurance issues." Therefore, Plaintiff and the putative collective action members did not have all travel time between job sites in a workday treated as compensable time by Defendant under the FLSA.

37. When Plaintiff and the rest of the Crew were finished at the last work location in a given day, they then drove/rode back to the Yard in the same company vehicle. At the Yard, Plaintiff and/or other members of the Crew performed work parking and storing Defendant's

vehicles and tools, unloading goods and/or materials relative to the workday, and other work before ending their workday and shift. Defendant has and had a practice and/or policy to not pay employees other than the driver for the time spent driving from the last work location of the day back to the Yard and to not pay for work performed at the Yard near the end of the daily shift. All such time was during the FLSA's continuous workday rule. Returning to the Yard and performing work at the Yard near the end of their scheduled shift is and was integral and indispensable to the job duties performed by Plaintiff and the putative collective action members during the workday.

38.     Plaintiff regularly worked in excess of 40 hours per seven-day workweek exclusive of the aforementioned work that Defendant did not treat as compensable time. That work occurred during the FLSA's continuous workday. Plaintiff was not paid time and one-half his regular rate of pay for each and every hour worked over 40 in all workweeks due to Defendant's aforementioned practices and/or policies relative to unpaid time at the Yard during the scheduled shift and unpaid drive, all of which was in the FLSA's continuous workday.

39.     During the time period of three years preceding the date this lawsuit was filed and forward, Defendant employed, and continues to employ, numerous other hourly paid employees who, like Plaintiff, regularly work(ed) in excess of 40 hours per workweek exclusive of the aforementioned work that Defendant did not and does not treat as compensable time. That work occurred during the FLSA's continuous workday. Those other hourly paid employees are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek due to Defendant's aforementioned practices and/or policies relative to unpaid time at a company yard during the scheduled shift and unpaid drive time, all of which is and was in the FLSA's continuous workday.

40. Defendant is and was required to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay when they work/worked in excess of 40 hours in a workweek pursuant to 29 U.S.C. § 207(a)(1).

41. The failure of Defendant to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in each seven-day workweek in the time period relevant to this lawsuit is a violation of the FLSA/PPPA.

## IV.  CONTROLLING LEGAL RULES

42. The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

43. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g). Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

44. "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he

finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time." 29 C.F.R. § 785.38.

45. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

46. An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (Solis, J.) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

47. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

48. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009). The employer has the burden of proof to establish that any remuneration may be excluded from the regular rate of pay. *Meadows v. Latshaw Drilling Co., LLC*, 338 F. Supp. 3d 587, 591 (N.D. Tex. 2018) (Godbey, J.).

49. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

50. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216(b).

### V.   **FLSA/PPPA CLAIMS**

51. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

52. At relevant times, Defendant is and/or was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

53. At relevant times, Defendant is and/or has been an enterprise engaged in commerce under the FLSA/PPA. 29 U.S.C. § 203(s)(1)(A).

54. Plaintiff and the putative collective action members are and/or were employees of Defendant pursuant to the FLSA/PPPA. 29 U.S.C. § 203(e).

55. Plaintiff and the putative collective action members are and/or were covered employees under 29 U.S.C. § 207(a)(1).

56. Plaintiff and the putative collective action members are and/or were paid on an hourly basis by Defendant.

57. At material times, Plaintiff and the putative collective action members regularly work and/or worked in excess of 40 hours per seven-day workweek as employees of Defendant.

58. Defendant is and/or was required to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1). That regular rate of pay must include all remuneration paid to Plaintiff and the putative collective action members.

59. Defendant failed to pay Plaintiff and putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

60. The putative collective action members are and/or were similarly situated to the Plaintiff and to each other under the FLSA/PPPA. 29 U.S.C. § 216(b).

61. Defendant's violations of the FLSA/PPPA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant is and was aware that Plaintiff and the putative collective action members are not and were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in a seven-day workweek. At one time, Mr. Eglin told Plaintiff and co-workers of Plaintiff's that an employee of Defendant named Eric Shigley, who is and was a superintendent for Defendant, stated that Crews at Defendant's Grand Prairie location should do what other crews of Defendant do at other locations, which was to let the foreman drive one leg of the daily travel to/from the yard or jobsite and let a laborer drive the opposite leg so that each could get paid for one way of that travel. All such travel was during the FLSA continuous workday and therefore should have been treated as compensable time under the

FLSA by Defendant. As previously identified, Mr. Eglin also told employees that they would not be paid for travel time during the workday.

62. Plaintiff and the putative collective action members seek all damages available for Defendant's failure to timely pay all overtime wages owed.

## VI.     FLSA/PPPA COLLECTIVE ACTION

63. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (Fish, J.) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (Boyle, J.) (same).

64. Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of himself and all current and/or former employees of Defendant who: (a) are and/or were employed as laborers paid on an hourly basis and (b) are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek in the relevant time period. Because Defendant did not and does not pay all overtime premium compensation owed to its hourly paid laborer employees who routinely work(ed) in excess of 40 hours per workweek, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

65. The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

66. Plaintiff reserves the right to establish sub-classes and/or modify collective action definition in any collective action certification motion or other filing.

## VII. JURY DEMAND

67. Plaintiff demands a jury trial.

## VIII. DAMAGES AND PRAYER

68. Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and the Collective Action Members be awarded a judgment against Defendant and/or order(s) from the Court for the following:

   a. An order conditionally certifying this case as a FLSA/PPPA collective action and requiring notice to be issued to all putative collective action members;

   b. All damages allowed by the FLSA/PPPA, including back overtime wages;

   c. Liquidated damages in an amount equal to back FLSA/PPPA mandated wages;

   d. Legal fees;

   e. Costs;

   f. Post-judgment interest; and/or

   g. All other relief to which Plaintiff and the Collective Action Members are entitled.

Date: July 29, 2020.

Respectfully submitted,

By: s/ Allen R. Vaught
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966
avaught@txlaborlaw.com
Nilges Draher Vaught PLLC
1910 Pacific Ave., Suite 9150
Dallas, Texas 75201
(214) 251-4157 – Telephone
(214) 261-5159 – Facsimile

ATTORNEYS FOR PLAINTIFF

*Plaintiff's Original Complaint – Page* 13